UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**WILLIAM J. BOSCH,**

        **Plaintiff,**

v.      Case No: 6:23-cv-1613-RBD-EJK

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

This cause comes before the Court on Plaintiff's appeal of an administrative decision denying his application for disability insurance benefits ("DIBs"), alleging March 29, 2019, as the disability onset date. (Tr. 57; Doc. 18 at 1.) In a decision dated February 2, 2023, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. (Tr. 17–34.) The undersigned has reviewed the record, the parties' memoranda (Docs. 18, 19, 24), and the applicable law. For the reasons stated herein, the undersigned respectfully recommends the Commissioner's decision be affirmed.

    **I.      BACKGROUND**

The ALJ found that Plaintiff suffered from the severe impairments of traumatic brain injury with memory and other cortical functions mildly reduced, disorders of the lumbar spine, disorders of the right shoulder, borderline personality disorder, learning disability, migraines, posttraumatic stress disorder, depression, and anxiety. (Tr. 20.) Aided by the testimony of a vocational expert ("VE"), the ALJ determined that

Plaintiff, despite these impairments, retains the residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. § 404.1567(c), with the following additional limitations:

> [F]requently climb ramps and stairs. He can occasionally climb ladders, ropes or scaffolds. The claimant can frequently stoop. He can do simple, routine, rote or repetitive tasks. He must avoid fast paced work, like on a conveyor belt, or work with strict production requirements. He can interact with supervisors, coworkers and the public occasionally. The claimant can adapt to occasional routine, and predictable workplace changes independently.

(Tr. 25.) The ALJ found that, with this RFC, Plaintiff could work as a floor waxer, groundskeeper, and hospital cleaner. (Tr. 33.) Plaintiff has exhausted his available administrative remedies and the case is properly before the Court.

## II.   ISSUES ON APPEAL

Plaintiff asserts the following issues on appeal:

1. Whether the ALJ properly evaluated the opinion of Plaintiff's treating neurologist, generated after Plaintiff's date last insured, in determining Plaintiff's RFC. (Doc. 18 at 12.)

2. Whether the ALJ failed to consider Plaintiff's fluctuating symptoms in assessing Plaintiff's RFC, pursuant to Social Security Ruling ("SSR") 96-8p. (*Id.* at 20.)

### III. STANDARD

The Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

### IV. ANALYSIS

#### A. Whether the ALJ properly evaluated the retrospective opinion of Plaintiff's treating neurologist in determining Plaintiff's RFC.

Plaintiff challenges the ALJ's finding as unpersuasive the retrospective opinion of Plaintiff's independent neurologist, Dr. Gary Weiss, in determining Plaintiff's RFC. (Doc. 18 at 12–20.) Plaintiff argues that the ALJ failed to evaluate the supportability of Dr. Weiss's opinion. (*Id.* at 12–13.) Additionally, Plaintiff argues that the ALJ erred in finding that Dr. Weiss's opinion was inconsistent, and discounting the extent of limitations therein, by comparing Dr. Weiss's opinion to Plaintiff's testimony that he is able to care for and pickup his toddler. (*Id.* at 15.) The Commissioner responds that the ALJ properly considered the supportability of Dr. Weiss's opinion by finding that Dr. Weiss did not indicate which part of his opinion addressed Plaintiff's impairments

during the relevant period, which is necessary when evaluating the supportability and consistency of a retrospective medical opinion. (Doc. 19 at 13.) The Commissioner further argues that Dr. Weiss's own treatment notes for the relevant time period do not support all of the limitations set forth in his opinion. (*Id.* at 14.) As to consistency, the Commissioner responds that the ALJ properly considered additional medical evidence contained in the record in finding Dr. Weiss's opinion inconsistent, and Plaintiff appears to be inviting this Court to reweigh the evidence or substitute its judgment for that of the ALJ. (*Id.* at 16–17.)

Under the revised regulations, the Commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the Commissioner must "consider" the "persuasiveness" of all medical opinions and prior administrative medical findings. *Id.* To that end, the Commissioner considers five factors: 1) supportability; 2) consistency; 3) relationship with the claimant[1]; 4) specialization; and 5) other factors "that tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* §§ 404.1520c(c); 416.920c(c).

The most important of these factors are supportability and consistency, and the ALJ must explain the consideration of those two factors. *Id.* §§ 404.1520c(a), (b)(2);

---

[1] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

416.920c(a), (b)(2). The ALJ may, but is not required to, explain how he or she considered the other factors (i.e., relationship with claimant, specialization, and "other factors"). *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2). In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis—the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source. *Id.* §§ 404.1520c(b)(1); 416.920c(b)(1). The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

*Id*. In sum, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record.

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1), 416.920c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in

the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

March 29, 2019,[2] is Plaintiff's disability onset date. (Tr. 57.) Plaintiff's date last insured ("DLI") was June 30, 2019. (Tr. 20.) On July 1, 2020, Plaintiff began treatment with neurologist Dr. Weiss. (Tr. 28.) Over two years later, on November 8, 2022, Dr. Weiss conducted a Physical Restrictions Evaluation of Plaintiff. (Tr. 543–46.) In completing the evaluation, Dr. Weiss was asked to review two MRIs of Plaintiff's lumbar spine taken on April 14, 2017, and March 8, 2019, as well as office treatment notes written by Devin Datta at the Brevard Orthopaedic Spine and Pain Clinic for visits from March 29, 2019, to June 29, 2020, and to answer the listed questions for the time period "beginning 6/1/2019 through the present date." (Tr. 543.)

Dr. Weiss opined that Plaintiff, during an eight-hour workday, would be off task 25% or more of the day, could sit for a total of three hours, stand and walk for two hours, and should lie down or recline, if necessary, every one to two hours for fifteen-to-thirty-minute durations due to Plaintiff's right shoulder pain, right foot drop, and unsteady gait or balance. (Tr. 543–44.) He further opined that Plaintiff had a moderately large herniated disc at L5-S1 and a small herniated disc at L4-5 with right greater than left radicular symptoms, and Plaintiff could lift or carry only 4-5 pounds occasionally. (Tr. 543.) Further, Plaintiff could never climb, stoop, crouch, kneel, or crawl, but could balance occasionally for 1-3 hours a day at most due to Plaintiff's

---

[2] Plaintiff amended his disability onset date at the hearing level. (Tr. 17.) Plaintiff's original disability onset date was March 27, 2017. (*Id.*)

impairments. (Tr. 543.) Dr. Wiess further concluded that Plaintiff's vision, hearing, and speaking were not affected by his impairments, but Plaintiff's ability to reach above his head, use fine finger manipulation, feel, push, and pull with his hands was affected, more so in his right hand, to the extent that he could complete tasks using these functions only 5% of the workday. (Tr. 545.) Dr. Weiss noted that his assessed limitations were based on Plaintiff's lightheadedness, significant memory loss, closed head injuries, right knee pain with swelling and buckling, panic attacks, anxiety, syncope, migraines or headaches, and that Plaintiff would be absent from work three or more days each month due to his impairments or doctor's appointments. (Tr. 543–45.) Finally, Dr. Weiss opined that Plaintiff's neurological exam and gait were abnormal, and those impairments were likely to produce "good days" and "bad days." (Tr. 544–45.)

When assessing the supportability of the opinion, the ALJ concluded that Dr. Weiss's opinion as to the limitations caused by Plaintiff's alleged impairments was not supported by Dr. Weiss's previous examination of Plaintiff. (Tr. 28.) Specifically, the ALJ discussed that, upon initial examination on July 1, 2020, Dr. Weiss observed:

> [T]he claimant's gait and station were abnormal, because he was taking small steps and was bent over the waist. While he was unable to do toe or heel walk on either side, the Romberg was negative and there was no drift of outstretched arms with eyes closed. Motor strength was normal in all four extremities. Reflexes were normal and sensation was intact, except the right lower leg diffusely. Cerebellar testing was within normal limits including AMR's, finger-finger-nose and heel-knee-shin testing bilaterally. No dysmetria or tremor was noted, Lumbar spine motions were reduced and there were spasms and

tenderness noted on palpation.

(Tr. 28, 471–74.) The ALJ further noted that while Dr. Weiss offered a diagnosis of memory loss, he previously opined during Plaintiff's initial examination that "the claimant was alert and well oriented" and Plaintiff's "memory and other cortical functions were grossly intact." (*Id.*) Regarding Plaintiff's lumbar pain, Dr. Weiss stated at the initial examination that Plaintiff "may be a candidate for disc replacement or minimally invasive surgery due to his young age," as Plaintiff was only 24 years old during the initial examination. (Tr. at 471.) Further, during his initial examination, Plaintiff denied having headaches, dizziness, or pain, numbness, tingling, or weakness in his bilateral arms and hands. (*Id.*)

Although the ALJ did not specifically use the word "supportability" in discussing Dr. Weiss's opinion, the ALJ met the articulation requirement and need not use the regulation's specific words in his determination. *Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *5 (M.D. Fla. Apr. 6, 2021) ("While he may not have used the words 'supportability' and 'consistency,' the ALJ's discussion of Dr. Birkmire's opinions and findings regarding the record was based on those factors."), *report and recommendation adopted*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021). Accordingly, I find Plaintiff's argument that the ALJ did not evaluate supportability to be unpersuasive. I further find that the ALJ did not err in finding that Dr. Weiss's opinion was not well supported.

Additionally, the ALJ found that Dr. Weiss's opinion was not consistent with other evidence contained in the record. (Tr. 29.) Regarding Plaintiff's cognitive issues,

the ALJ considered treatment notes contained throughout the record that were drafted prior to Plaintiff's DLI and Dr. Weiss's initial examination, in which Plaintiff was observed to be alert and well-oriented, there was no evidence of a thought disorder, and Plaintiff's memory and cortical functions were intact or mildly reduced. (Tr. at 256–57, 274, 358–59, 362, 365, 368, 371–72, 391, 397.) As to Plaintiff's back, shoulder, legs, and knee pain, the ALJ considered records from Plaintiff's March 29, 2019, examination performed by Casey Langel, PA, in which claimant reported back pain, bilateral leg pain that was greater in his right leg, and weakness in his right knee, although Langel observed Plaintiff picking his toddler daughter up during the office visit. (Tr. 27, 346.) Upon examination, Plaintiff did not need an assistive device for ambulation, had 5/5 dorsiflexion and plantar flexion with no motor deficit, and positive leg raise on the right and negative on the left. (Tr. 346, 352.) Plaintiff's extremities had no shortage of blood flow, and while he had some right shoulder pain, he still had active range at about 90 degrees internal, and external rotation of the shoulder without pain along the right AC shoulder joint and along the right shoulder scapular region. (*Id.*)

The ALJ also considered records from Plaintiff's July 9, 2019, examination performed by Dr. Devin Datta, and although Plaintiff brought a cane with him to this examination, the ALJ noted that he was able to ambulate fine without a cane at his prior examination. (Tr. 28, 338.) Upon examination, he was able to rise on his toes and heels with slight assistance, and although he reported foot drop, Dr. Datta did not "detect a full foot drop on exam." (Tr. 338.) Plaintiff's Waddell's test showed two out

of the five categories, and Dr. Datta recommended radiofrequency ablation or, failing that, a lumbar discogram. (Tr. 338.) Plaintiff's argument that the ALJ did not address the records considered by Dr. Weiss is unpersuasive, as the ALJ thoroughly discussed them in finding Dr. Weiss's opinion not to be consistent with prior medical records. (Tr. at 25–28.)

Although Plaintiff's condition appears to have worsened after his DLI, there was substantial evidence contained in the record, as discussed above, to support the ALJ's conclusion that Dr. Weiss's opinion was unpersuasive because the opinion was retrospective, not supported by Dr. Weiss's own prior examination, and inconsistent with prior medical records before Plaintiff's DLI. *See Whitton v. Comm'r, Soc. Sec. Admin.*, 643 F. App'x 842, 847 (11th Cir. 2016) (per curiam) (finding that ALJ did not err in assigning no weight to a medical opinion, in part, because it was issued after the claimant's date last insured and did not address the extent of the claimant's condition during the relevant time period); *Demandre v. Califano*, 591 F.2d 1088, 1090–91 (5th Cir. 1979) (per curiam) (finding that medical evidence supported the ALJ's decision to deny a claim because the claimant's condition deteriorated after the claimant's date last insured and, by the end of the relevant period, the physician thought the claimant's condition would improve within two months).[3]

---

[3] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

The ALJ's opinion, properly read as a whole, satisfies the supportability and consistency requirements. *See Raper v. Comm'r*, 89 F. 4th 1261, 1265 (11th Cir. 2024) (holding that the ALJ's decision, read as a whole, contained a sufficient explanation for why the ALJ found a claimant's treating physician's medical opinion inconsistent with the record). Accordingly, this argument fails.

### B. Whether the ALJ considered Plaintiff's fluctuating symptoms in determining his RFC.

Plaintiff argues that the ALJ erred in determining that Plaintiff has the RFC to perform medium work by failing to consider the fluctuation of Plaintiff's symptoms. (Doc. 18 at 21.) Plaintiff bases this assertion on a portion of Dr. Weiss's Physical Restrictions Evaluation in which Dr. Weiss checked the box "yes" in response to the questions "[a]re your patient's impairments likely to produce 'good days' and 'bad days.'" (Tr. 544.) In the explanation portion of the questionnaire, Dr. Weiss directs the ALJ back to the portion of the questionnaire where he concluded Plaintiff's workday limitations discussed above. (*Id.*)

Plaintiff relies upon *Simon*, *Tavarez*, and *Martz* for the proposition that the ALJ should have explicitly considered his fluctuating symptoms in evaluating his RFC. (Doc. 18 at 22–24); *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1106 (11th Cir. 2021); *Martz v. Comm'r, Soc. Sec. Admin.*, 649 F. App'x 948, 957–58 (11th Cir. 2016); *Tavarez v. Comm'r of Soc. Sec.*, 638 F. App'x 841, 847–848 (11th Cir. 2016). The undersigned finds that these cases are distinguishable from the instant case.

As an initial matter, the treating-physician rule and good cause requirement that applied in *Simon* do not apply here, as this case is governed by the revised regulations. *Simon*, 7 F.4th at 1094. There is a difference between finding that an ALJ's rationale is insufficient to discount an opinion that would otherwise be entitled to controlling weight, on the one hand, and finding that, based on substantial evidence, an ALJ erred in determining that an opinion is not supported when that opinion is entitled to no special deference. Thus, the ALJ's reasons for finding that the supportability and consistency factors undermined the persuasiveness of Dr. Weiss's opinion are adequate given that Dr. Weiss's opinion is not entitled to any special deference, unlike the opinions of the treating physicians in cases like *Simon*.

Additionally, in *Tavarez,* the ALJ relied upon the Plaintiff's fluctuating symptoms in finding a doctor's opinion unpersuasive. *Tavarez,* 638 F. App'x 841, 848–50. Here, the ALJ did not rely upon Plaintiff's fluctuating symptoms in finding Dr. Weiss's opinion unpersuasive. *See Bentley v. Comm'r of Soc. Sec.*, No. 6:21-cv-226-DCI, 2022 WL 1553425, *3 (M.D. Fla. May 17, 2022) (distinguishing *Tavarez* because "[h]ere, the ALJ did not rely upon the claimant's fluctuating symptoms in finding [the physician's] opinion unpersuasive"). Moreover, as discussed above, the ALJ properly considered the required factors of supportability and consistency when weighing the persuasiveness of Dr. Weiss's opinion. That is all the ALJ was required to do under the revised regulations. Plaintiff did not start treating with Dr. Weiss until after his DLI, unlike the plaintiff in *Martz*, who had a longstanding relationship and frequent treatment with the physician whose opinion was at issue in that case. *Martz*, 649 F.

App'x at 958–60. The ALJ's conclusion that the state agency physicians' opinions were persuasive in determining Plaintiff's RFC was supported by substantial evidence. Likewise, the ALJ's cited reasons for discounting Dr. Weiss's opinion were supported by substantial evidence.

Finally, Plaintiff fails to point to evidence showing that his impairments fluctuated to such an extent as to preclude employment. Plaintiff's arguments to the contrary, as the Commissioner points out, are tantamount to a request for this Court to reweigh the evidence the ALJ already reviewed and discussed—which it cannot do. *Winschel*, 631 F.3d at 1178 ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].") (citations and quotations omitted). Accordingly, I find no reversible error in the ALJ's RFC assessment.

## V. RECOMMENDATION

Upon consideration of the foregoing, I find that the ALJ's decision is supported by substantial evidence, and for that reason, I **RESPECTFULLY RECOMMEND** that:

1. The Commissioner's decision be **AFFIRMED**.
2. The Clerk of Court be **DIRECTED** to enter judgment accordingly and close the file.

## **NOTICE TO PARTIES**

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on July 24, 2024.

[signature]

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE